1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CLEAN CRAWL, INC.,

Plaintiff,

v.

CRAWL SPACE CLEANING PROS,
INC.,

Defendant.

CASE NO. C17-1340 BHS

ORDER DENYING THE
REMAINING QUESTIONS ON
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

This matter comes before the Court on Defendant Crawl Space Cleaning Pros,

Inc.'s ("CSCP") motion for summary judgment, Dkt. 39, the Court's Order denying the

motion in part, granting it in part, and requesting supplemental briefing, Dkt. 75, and the

parties' supplemental briefing, Dkts. 80, 83, 90, 91. The Court has considered the

pleadings filed in support of and in opposition to the motion and the remainder of the file

and hereby denies the remainder of the motion for the reasons stated herein.

## I.   PROCEDURAL HISTORY AND FACTUAL BACKGROUND

This suit arises from copyright and trademark disputes between Plaintiff Clean

Crawl, Inc. ("CCI") and CSCP, two businesses which clean attic and crawl spaces and

provide pest exclusion services for homes in the Western Washington area. *See* Dkts. 48 at 7, 39 at 2.

CCI began doing business in its current iteration in 2001 when its president, Charles Henrichsen ("Henrichsen"), transferred his Bio Bug Pest Management, Inc. business to CCI, Dkt. 48 at 6, and began using the trade name CLEAN CRAWLS, Dkt. 49, Declaration of Charles Henrichsen ("Henrichsen Decl.") at 3.[1] CSCP, using the trade name Crawl Pros, began operations on January 9, 2013, under founder and owner Richard Herron ("Herron"). Dkt. 39 (citing Dkt. 40, Declaration of Richard Herron ("Herron Decl."), at 1). CCI provides "air duct cleaning services, animal contamination cleaning and disposal services, pest control for commercial and residential buildings, and environmental containment." Dkt. 48 at 7 (citing Henrichsen Decl. at 2–3, 6–7). CSCP provides "crawlspace and attic cleaning and restoration, insulation installation, crawl space encapsulation and sealing, rodent exclusion, duct sealing, and water mediation and flooding." Dkt. 39 at 2 (citing Herron Decl. at 1). CSCP characterizes the nature of the companies' business as "substantially similar." Dkt. 39 at 2. CCI confirms this, stating that "[i]t is undisputed that both companies provide identical, directly competing services." Dkt. 48 at 24.

Henrichsen declares that he met Herron in 2008 through an insulation and energy efficiency industry association and mentored Herron in starting a business, Sustainable Building and Insulation ("SBI"). Henrichsen Decl. at 3–4. Henrichsen declares that he

---

[1] The Court refers to ECF pagination throughout this Order if available.

ORDER - 2

1  made SBI a CCI subcontractor, and one of his employees, CCI sales representative Jared

2  Pullen ("Pullen"), referred "many jobs" to SBI. *Id*. at 4. Henrichsen declares that these

3  referrals allowed Pullen and Herron to be "heavily exposed" to CCI's "family of

4  trademarks and copyrights" between 2010 and 2013. *Id.* Henrichsen also declares that all

5  of CCI's copyrighted materials at issue "were substantially completed in the form

6  registered in the 2008-2009 time frame." *Id.* at 5. Finally, Henrichsen declares that CCI

7  has used its trademarks and copyrights with customers in fourteen western Washington

8  counties since 2010. *Id*. at 6.

9      On August 14, 2017, CSCP filed a complaint against CCI in the Pierce County

10  Superior Court for violation of Washington's Trademark Registration Act, RCW Chapter

11  19.77 *et seq.*, common law trademark infringement, and violation of Washington's

12  Consumer Protection Act ("CPA"), RCW Chapter 19.86. Dkt. 39 at 5.

13      On September 6, 2017, CCI filed this lawsuit against CSCP, alleging copyright

14  infringement, trademark infringement, false designation of origin and unfair competition,

15  and violation of the CPA, and seeking a permanent injunction against infringement of the

16  copyrighted materials and the trademarked materials, destruction of all infringing

17  materials, damages, and other relief. Dkt. 1. On March 19, 2018, CSCP filed an amended

18  answer in the instant case, asserting counterclaims and affirmative defenses. Dkt. 32.

19      On September 6, 2018, CSCP filed a motion for summary judgment. Dkt. 39. On

20  January 29, 2019, the Court granted the motion as to CCI's copyright claims for two of

21  the five copyrighted documents at issue. Dkt. 75 at 40. The Court denied summary

22  judgement as to CCI's trademark claims, and reserved ruling and requested supplemental

1   briefing as to CCI's copyright claims for the remaining three documents, a Project Graph,

2   a Project Bid Sheet, and a Venting Calculator. *Id*. On February 15, 2019, the parties

3   submitted opening supplemental briefing. Dkts. 80, 83. On February 22, 2019, the parties

4   submitted responsive supplemental briefing. Dkts. 90, 91.

5                               **II.        DISCUSSION**

6   **A.       Summary Judgment Standard**

7           Summary judgment is proper only if the pleadings, the discovery and disclosure

8   materials on file, and any affidavits show that there is no genuine issue as to any material

9   fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

10   The moving party is entitled to judgment as a matter of law when the nonmoving party

11   fails to make a sufficient showing on an essential element of a claim in the case on which

12   the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

13   323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole,

14   could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec.*

15   *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

16   present specific, significant probative evidence, not simply "some metaphysical doubt").

17   *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists

18   if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

19   jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477

20   U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

21   626, 630 (9th Cir. 1987).

22

1    The determination of the existence of a material fact is often a close question. The

2  Court must consider the substantive evidentiary burden that the nonmoving party must

3  meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477

4  U.S. at 254; *T.W. Elec. Serv., Inc*., 809 F.2d at 630.  The Court must resolve any factual

5  issues of controversy in favor of the nonmoving party only when the facts specifically

6  attested by that party contradict facts specifically attested by the moving party.  The

7  nonmoving party may not merely state that it will discredit the moving party's evidence

8  at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W.*

9  *Elec. Serv., Inc*., 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory,

10  nonspecific statements in affidavits are not sufficient, and missing facts will not be

11  presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

12  **B.        Remaining Copyright Claims**

13        Pending before the Court are CCI's claims that CSCP has deliberately copied and

14  used three of CCI's works of authorship named in pending federal copyright applications:

15  (1) CCI's Project Graph, (2) CCI's Project Bid Sheet, and (3) CCI's Venting Calculator.

16  Dkt. 1, ¶¶ 12, 23.

17        Plaintiffs alleging copyright infringement must demonstrate: "(1) ownership of a

18  valid copyright and (2) copying of constituent elements of the work that are original."

19  *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 361 (1991)

20  ("*Feist*").

21         If the ownership prong is in question, the Court must consider five elements: "(1)

22  originality in the author; (2) copyrightability of the subject matter; (3) citizenship status

1    of the author, such as to permit a claim of copyright; (4) compliance with applicable

2    statutory formalities; and (4) (if the plaintiff is not the author) a transfer of rights or other

3    relationship between the author and the plaintiff so as to constitute the plaintiff the valid

4    copyright claimant." *Advanz Behavioral Mgmt. Res., Inc. v. Miraflor*, 21 F. Supp. 2d

5    1179, 1183 (C.D. Cal. 1998) ("*Advanz*") (citing 4 Nimmer on Copyright § 13.01(A)

6    (1997)). "[O]nly those elements of a work that are protectable and used without the

7    author's permission can be compared when it comes to the ultimate question of illicit

8    copying." *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994).

9    If the second prong, copying, is at issue but the plaintiff does not have evidence of direct

10    copying, they can show "the defendant had 'access' to the plaintiff's work and that the

11    two works are 'substantially similar.'" *Funky Films, Inc. v. Time Warner Entm't Co.,*

12    *L.P.*, 462 F.3d 1072, 1076 (9th Cir. 2006).

13        If the Court finds copyrightable subject-matter and the remaining ownership

14    elements are satisfied, the Court must then determine which shared elements of the work

15    are protectable, and how broad that protection should be under the "extrinsic/intrinsic"

16    framework discussed in *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th Cir.

17    2010).

18        **1.**     **Project Graph**

19        CCI's Certificate of Registration with the U.S. Copyright Office for the "Project

20    Graph" identifies a "compilation of text and illustrations." Dkt. 49-1 at 2. The Project

21    Graph document is a sheet of graph paper with boxes at the top for the CCI employee to

22    fill in information identifying the job, an expanse of graph paper, and a series of boxes at

the bottom with images of different rodents and a series of tasks the employee may need

to complete in the home, from "A, Re-Screen Vent (Crawlspace)" through "O, Roof

Ridge Line/Roof Cap." *Id.* The CCI and CSCP documents have a very similar

appearance, include an identical task list in the bottom right corner, similar pictures of

rodents in the bottom left corner, and a slightly different series of boxes for a technician

to record information across the bottom fifth of the page identifying features and safety

hazards of the house. *Compare* Dkt. 49-1 at 2, *with* Dkt. 57-1 at 29–30.

CSCP challenges a sub-element of ownership, copyrightability of the subject

matter, for both the Project Graph and the Project Bid Sheet. CSCP argues these works

are blank forms not permitted copyright protection under 37 C.F.R. § 202.1(c). Dkt. 39 at

9. The regulation provides that "[b]lank forms, such as time cards, graph paper, account

books, diaries, bank checks, scorecards, address books, report forms, order forms, and the

like, which are designed for recording information and do not themselves convey

information" are material not subject to copyright. 37 C.F.R. § 202.1(c). CSCP concedes

that "CCI's certificates of registration for [the works] create a rebuttable presumption that

the works at issue contain copyrightable subject matter" and CSCP "has the burden of

persuasion" to rebut the presumption. Dkt. 39 at 8 (citing *Bibbero Sys., Inc. v. Colwell*

*Sys., Inc*, 893 F.2d 1104, 1106 (9th Cir. 1990) ("*Bibbero*")). [2]

---

[2] As noted in the Court's previous Order, CSCP has accepted the burden of persuasion in this case despite an apparent delay in registration of more than five years under 47 U.S.C.A. § 410(c). *See* Dkt. 75 at 29 n.7. CSCP again does not address this issue in its supplemental briefing. *See* Dkts. 80, 90. Construing all facts in favor of the non-moving party, the Court will follow CSCP's acceptance of the burden to rebut the presumption that the works contain copyrightable subject matter.

The Court asked for supplemental briefing on the differences or lack thereof

between the Project Graph's task list and the available universe of tasks in the industry

and ways this form might fall outside the Ninth Circuit's restrictive construction of the

blank forms rule. Dkt. 75 at 34.

As discussed in the Court's prior Order on CSCP's motion for summary judgment,

Dkt. 75, the "blank forms rule" is a subject of criticism and differing interpretations

among circuit courts. In the Ninth Circuit's interpretation of of 37 C.F.R. § 202.1(c), the

rule excluding blank forms from copyright protection in *Bibbero*, a blank form's

inclusion of some categories of information and not others does not make it

copyrightable, nor does the fact that "considerable effort and creativity went into

designing it" necessarily make it copyrightable. *Bibbero*, 893 F.2d at 1107, 1108 n.1.

The Ninth Circuit has found several pages of instructions and advice

accompanying a set of forms, *Edwin K. Williams & Co., Inc. v. Edwin K. Williams & Co.,*

*East*, 542 F.2d 1053, 1060–61 (9th Cir. 1976), or a "combination of unprotectable

elements . . . numerous enough and their selection an arrangement original enough that

their combination constitutes an original work of authorship," *Satava v. Lowry*, 323 F.3d

805, 811 (9th Cir. 2003), can create a protectable work. On the other hand, forms which

only record information and convey nothing else unless they are filled out are

unprotectable under the Ninth Circuit's interpretation. *Bibbero*, 893 F.3d at 1107.

CCI provides a list of forms used by other companies "embodying a plethora of

categories" and explains that its form uniquely combines an order form, technician

training form, and customer information form, which "is originally and uniquely

associated" with CCI. Dkt. 83 at 4–5. CSCP argues that the Project Graph "has none of the requisite creative spark or instructive material to be excepted from this Circuit's blank forms rule." Dkt. 90 at 2 (citing *Advanz*, 21 F. Supp. 2d at 1183). CSCP argues that the terms and tasks CCI lists on the form are not original and only slightly specific to crawl space and attic contractors as distinct from the remainder of the contracting industry. *Id*. at 2. Regarding the Graph's layout, CSCP argues that CCI's supporting exhibits show a "common, consistent format used within the industry for recording job information." Dkt. 90 at 3 (citing Dkt. 84).

On review of the exhibits, seven out of the nine appear visually similar to CCI's Project Graph, featuring a sheet of graph paper with a list of information to be gathered. Dkt. 84-1. While the examples generally do not feature the same list of tasks or information to be gathered, the majority of examples also appear to pertain to a different variant of the industry—addressing ant, termite, or fungus damage to homes—not within either CSCP or CCI's areas of focus. *See* Dkt. 84-1. Therefore, the categories listed in the examples do not advance CCI's argument that its categories are uniquely developed within the crawlspace industry. The examples also do not clearly advance CCI's argument that it has uniquely combined information for technicians and for communication to customers in one from.

The statements cited in CCI's briefing from the declaration of General Manager Andrew Gjerness ("Andrew Gjerness") regarding what the Project Graph conveys can be divided into four categories: (1) statements that the Project Graph conveys information to the technician before it is filled in, (2) statements that the Project Graph conveys

1   information to the customer before it is filled in, (3) statements that the Project Graph

2   conveys information to the technician after it is filled in, and (4) statements that the

3   Project Graph conveys information to the customer after it is filled in. Dkt. 84.

4        Statements that speak to the third and fourth categories, such as that technicians

5   may consult the form to determine which materials to pack for a particular job, Dkt. 83 at

6   1–2 (citing Dkt. 84, ¶ 6), likely fall afoul of *Bibbero*'s requirement that a form

7   communicate something prior to being completed. 893 F.3d at 1103. However,

8   statements in the declaration explaining what information is conveyed before the form is

9   filled out are some evidence that it does in fact convey information, even if it does so

10  through an original compilation of unprotectable elements. *Satava*, 323 F.3d at 811; *see*

11  *also Harper House, Inc. v. Thomas Nelson, Inc.*, 899 F.2d 197, 204 (9th Cir. 1989)

12  (particular collection of components carefully arranged into personal organizer is

13  copyrightable as compilation). Regarding CCI staff, Andrew Gjerness declares that the

14  Project Graph was designed as a training tool for CCI technicians "which allows them to

15  understand the scope of [CCI's] preferred method of exclusion work that is performed to

16  prevent rodent intrusion," that "the graphics and letter elements of the Project Graph

17  becomes routinely familiar to the technician with the visual clues associated with each

18  graphic or letter element," and that the Project Graph reminds CCI sales representatives

19  and technicians "to collect the requisite information gleamed [sic] from the Project Graph

20  while onsite," Dkt. 84, ¶¶ 2, 7, 10. Regarding customers, he declares that the Project

21  Graph "is a specifically designed tool for [CCI's] technicians and sales representatives to

22  use at a job site to convey vital job requirements to a customer through descripti[on] and

visualization of the work to be performed" and that "[t]he rodent images serve an

instructive purpose to help customers identify the type of rodents that have been in their

home," Dkt. 84, ¶¶ 12, 17. Regarding both technicians and customers, he declares that

"[e]ach of the terms and images in the Project Graph was specifically selected from

[CCI's] years of industry knowledge and identification of what needs to be

communicated in an instructive and informative matter to technicians and customers" and

that the "instructions" were narrowed down "by studying over the years where problems

arose on a job site." Dkt. 84, ¶¶ 30, 31.

The Andrew Gjerness declaration is at least some evidence that the form's

categories convey information by reminding technicians of their training, conveying

CCI's process to customers, and providing customers with a basis from which to

understand CCI's process and identify their own questions or concerns. While CSCP

argues that courts have found works have no creativity when their content is driven solely

by functionality, the cited case, *Reynolds & Reynolds Co. v. Alternative Source Inc.*, CV

12-10717 GAF (SHx), 2014 U.S. Dist. LEXIS 200173, *8 (C.D. Cal 2014), found a

question of fact as to whether at least parts of legal forms used by car dealerships were

driven solely by function, or state or federal law requirements. Dkt. 80 at 2. Because

CCI's certificate of registration for the Project Graph creates a rebuttable presumption

that the works at issue contain copyrightable subject matter, and there is some evidence

that before the form is filled out, it instructs and remind its technicians about how to

communicate with customers and engages the customer in helping to solve the problem

1  in their home, the Court finds CSCP has failed to rebut the presumption that the work is

2  copyrightable. *See* Dkt. 75 at 29.

3      If a copyrightable work potentially exists, even if the available protection may be

4  thin, the Court cannot grant summary judgment for CSCP by finding that CCI's work

5  contains no protectable content at all. *See Mattel*, 616 F.3d at 913–14 ("If there's only a

6  narrow range of expression (for example, there are only so many ways to paint a red

7  bouncy ball on a blank canvas), then the copyright protection is 'thin' and a work must be

8  'virtually identical' to infringe." (internal citations omitted)). Though there may only be a

9  limited number of ways to express reminders to technicians and communicate expertise

10 to customers in a crawl-space industry form, a virtually identical form could infringe the

11 copyright. *Satava*, 323 F.3d at 812–13. Therefore, the Court denies summary judgment

12 for CSCP on the Project Graph.

13      **2.      Project Bid Sheet**

14      CCI's Certificate of Registration with the U.S. Copyright Office identifies the

15 "Project Bid Sheet" as containing author-created text. Dkt. 49-1 at 5–8. The first page of

16 the document contains spaces to record customer information and the tasks to be

17 completed along with their costs, statements, recommendations, and disclaimers to the

18 customer, and spaces for signature. *Id.* at 5. The second and third pages contain

19 contracted terms between CCI and the customer. *Id.* at 7–8.

20      The Court's previous Order found that it was unclear which aspects of the Bid

21 Sheet were original and thus protectable. Dkt. 75 at 35. "To qualify for copyright

22

1  protection, a work must be original to the author," meaning "independently created by the

2  author." *Feist*, 499 U.S. at 345.

3       Regarding the Bid Sheet generally, CSCP argues that CCI's choice are obvious

4  and completely dictated by function. Dkt. 80 at 4. CCI counters that its choices support

5  its training of its staff and engage customers in understanding its industry expertise. The

6  parties provide specific arguments directed at each page of the document, which the

7  Court will address in turn.

8       Regarding the first page of the Bid Sheet, CSCP argues that it contains "nothing

9  but the same information used by everyone in the crawlspace and attic cleaning industry."

10  Dkt. 80 at 1. Andrew Gjerness declares that the color coding in the "Phases of Work"

11  section on the front page "conveys to the customer that there may be certain projects in

12  this business that require multiple phases to complete." Dkt. 84, ¶ 43. He explains that

13  this color-coding demonstrates CCI's unique multi-phase approach to customers and

14  informs them that CCI does pest control services as well as insulation work. *Id.* ¶¶ 44–46.

15  He also declares that the organization of the first page of the document "conveys to

16  customers the implementation of the job requirements in an easily understood method" to

17  avoid future misunderstanding. *Id.* ¶ 51. The declaration also appears to support that CCI

18  claims the "Utility Rebate/Incentive Payment Notification" section of the first page is

19  original, arguing that without it, "many customers would not have been made aware of

20  the utility rebate programs." *Id.* ¶ 53. CCI also argues that the "Target Pest" and "On-

21  going Pest Control Start Month" boxes emphasize the phases of work. Dkt. 83 at 8. CCI

22  finally argues that "even if some type of 'Notice to customer' is statutorily mandate[d], it

1    does not follow that . . . that [CCI's] unique authorship is not entitled to copyright

2    protection," Dkt. 91 at 5.

3         However, the only one of these potentially protectable features which appear on

4    the first page of CSCP's Bid Sheet is the signing statement, reading in part "By signing

5    below the customer agrees to the following." Dkt. 57-1 at 32, 34. Neither the old nor the

6    new version of CSCP's forms feature color-coding or any other reference to work

7    performed in phases, does not identify a "target pest" or "on-going pest control start

8    month," and do not include text explaining utility rebates. Dkt. 57-1 at 32, 34. CSCP's

9    forms have a box labeled "Less Rebates," presumably where a utility rebate could be

10   subtracted from the total bill, but CCI cannot claim copyright protection in the concept of

11   informing customers utility rebates are available—CCI could only claim protection for its

12   expression of this idea, and there is no evidence it has been infringed. *See, e.g., Tetris*

13   *Holding*, 863 F. Supp. 2d at 400 (citing 17 U.S.C. § 102(a), (b)). The remainder of the

14   first page of CCI's Bid Sheet consists of blank spaces labeled with utilitarian phrases like

15   "Customer Name," "Job Address," and "Billing Address." Dkt. 49-1 at 6. These

16   utilitarian labels would likely either not be eligible for the copyright, which is for author-

17   created text, or this portion of the form would be unprotectable under *Bibbero*.

18        Because "only those elements of a work that are protectable . . . can be compared

19   when it comes to the ultimate question of illicit copying," *Apple Computer*, 35 F.3d at

20   1443, it appears that the only element CCI claims is protectable on the first page of the

21   Bid Sheet for which it has provided evidence of copying is the "Notice to Customer."

22

The second page of the Bid Sheet is titled "General Conditions." Dkt. 49-1 at 6.

Andrew Gjerness of CCI declares that this page was "specifically drafted to convey an

agreement that incorporates terms unique to the pest control industry." Dkt. 84, ¶ 55.

While CSCP argues that section 10 of this page, entitled "Notice to Customer" copies

"language made available for use by contractors on the Washington State Department of

Labor and Industries website, Dkt. 80 at 5, as CCI points out, CSCP "fails to deny that it

copied the other nine sections on page 2, which along [sic] more than demonstrates

substantial similarity and copyright infringement." Dkt. 91 at 5. While CSCP also argues

that it was granted an oral license to use the "General Conditions" text from CCI

president Henrichsen "so long as no CCI logos appeared," Dkt. 80 at 6 (citing Dkt. 82, ¶

5), CCI counters that this claim is false and in fact "confirms [CCI's] intent to copy and

that it succeeded," Dkt. 91 at 5.

Therefore, a question of fact exists about CSCP's potential defense of an oral

license, and Andrew Gjerness's declaration is some evidence from which a juror could

conclude that the majority of the text of the General Conditions page is original to CCI.

The third page is titled "Terms and Conditions Clean Crawls Pest Service

Division." Dkt. 49-1 at 7. CSCP argues that CCI "has provided no evidence that [CSCP]

has actually infringed" this third page. Dkt. 80 at 2. CCI argues correctly that substantial

similarity may still exist without finding that the entire work was copied if "only a

relatively small, but significant, portion of the work [was] copied." Dkt. 91 at 5. "[A]

copyright defendant need not copy a plaintiff's work in its entirety to infringe that work.

It is enough that the defendant appropriated a substantial portion of the plaintiff's work."

*L.A. Printex Industries v. Aeropostale, Inc.*, 676 F.3d 841, 852 (9th Cir. 2012).

Here, the Court is not asked to decide whether infringement occurred. The Court is asked to decide CSCP's motion for summary judgment, which as to the Bid Sheet, was made on the basis that CCI's claim for infringement must fail because the Bid Sheet "lack[ed] the necessary minimal degree of originality to qualify as copyrightable material." Dkt. 39 at 8. The Court finds there is at least a question of fact as to whether CSCP infringed a substantial portion of the document original to CCI, and therefore denies summary judgment on the Bid Sheet.

### 3. Venting Calculator

CCI's Certificate of Registration with the U.S. Copyright Office identifies the "Venting Calculator" as containing a "compilation of text and equations." Dkt. 49-1 at 34–36. The Venting Calculator consists of two pages, the first containing colored boxes and simple instructions for the user to input figures to calculate the appropriate venting in different areas of a home, and the second containing a table of venting data. *Id.*

Here, the Court sought additional briefing outlining the differences, if any, between the factual calculations involved in determining the number of vents a service provider would install in a home and the information conveyed by specific color choices and layout of the document. Dkt. 75 at 40 (citing *Cash Dividend Check Corp. v. Davis*, 247 F.2d 458, 460 (9th Cir. 1957)). CCI now informs the Court that it has made an additional filing with the Copyright Office to clarify that "the second page of the deposit is not part of applicant's authorship." Dkt. 83 at 9 n.1. If CCI does not claim to have

authored the second page of the Venting Calculator, that portion of the document cannot

support a claim of infringement. Therefore, the Court grants summary judgment for

CSCP as to the second page of the Venting Calculator and turns to consider whether

summary judgment is proper on CCI's claim of infringement as to the first page.

CSCP argues that CCI's use of color in the venting calculations is functional,

facilitates the use of the form, and is not protectable under copyright. Dkt. 80 at 7 (citing

11 Nimmer on Copyright 313 (2018) (citing *Baker v. Selden*, 101 U.S. 99 (1879)). CSCP

argues that CCI's use of color-coding is not creative expression but an attempt to

copyright an idea or the underlying calculation—the "'necessary incident' for proper use

of the calculations." Dkt. 80 at 7 (citing *Tetris Holding*, 863 F. Supp. 2d at 405). Because

CCI's Vice President of Finance and Operations Dale Gjerness testified in his deposition

that the Venting Calculator's colors facilitated the use of the form, CSCP argues that the

color coding is not distinguishable from the method itself. *Id.* at 8 (citing *Tetris Holding*,

863 F. Supp. 2d at 406).

The Court disagrees. CSCP moved for summary judgment on the basis that CCI

could not claim copyright protection for "the procedure by which the facts of a given

house dictate the work that both CCI and [CSCP] perform." Dkt. 39 at 11. A

mathematical equation is distinguishable from an illustration of that equation

incorporating color, instructions, and formatting which orients the illustration's user to

the way the equation relates to the physical structure of a home. CCI cannot copyright a

procedure or a fact, *Feist*, 499 U.S. at 347, but it can copyright a "form to visualize a

system that allows a technician to easily index the values in their mind while working

through the sheet," which "visually guide[s] the technician-user through the calculations" and "conveys to the technician the order in which to pay attention to the boxes while also strengthens [sic] the technician's cognizance of what is happening in the calculations." Dkt. 85, ¶¶ 7, 10, 11. Like in *Cash Dividend*, 247 F.2d at 460, the "integrated subject of copyright," here the combination of visual organization of a calculation, color coding, and instruction, conveys more to the user than the underlying functionality or formula. Allowing some copyright protection for the Venting Calculator does not preclude other crawl space companies from creating their own set of instructions or flow charts to guide their technicians through the venting calculations used by providers in the industry. *See Feist*, 499 U.S. at 349 ("Notwithstanding a valid copyright, a subsequent compiler remains free to use the facts contained in another's publication to aid in preparing a competing work, so long as the competing work does not feature the same selection and arrangement."); *see also Mattel*, 616 F.3d at 913–14 (concept with wide range of possible expression like aliens-attack movie can be infringed by substantial similarity, but concept with narrow range of possible expression like painting of a red ball on a blank canvas can be infringed by virtually identical copying). For these reasons, the Court cannot conclude that the first page of the Venting Calculator consists entirely of uncopyrightable facts, procedures, or systems, and denies summary judgment for CSCP on the first page of the Venting Calculator.

**C.      Motions to Supplement the Record and to Seal**

Upon review of the file, the Court finds four pending procedural motions in this case.

On January 23, 2019, CCI filed a motion for leave to supplement the record related to CSCP's motion for summary judgment. Dkt. 74. The Court reviewed the motion as part of its initial consideration of CSCP's motion for summary judgment and found that the supplemental information did not alter its conclusions. *See* Dkt. 75 at 6 n.3. Now, as the motion appears to contain at least some relevant material and CSCP has not indicated any opposition, the Court grants the motion, subject to later specific objection by CSCP. Dkt. 74.

On March 5, 2019, the Court issued an Order requesting additional briefing and renoting the parties' outstanding motions to seal—CSCP's motions, Dkts. 77, 93, and CCI's motion, Dkt. 98. Dkt. 106. The Court requested supplemental briefing regarding Dkt. 77 and additional briefing or new motions regarding the motions to seal motions in limine, Dkt. 93 and Dkt. 98. *Id*. at 1. The motions were renoted for March 22, 2019. Dkt. 106. The Court notified the parties that if the additional materials requested were not provided before the renoting date, the Court would deny the motions. *Id*. at 3. March 22, 2019 is well past, and the parties have not provided additional briefing. Therefore, the Court denies CSCP's motions to seal, Dkts. 77, 93, and CCI's motion to seal, Dkt. 98.

### III. ORDER

Therefore, it is hereby **ORDERED** that CSCP's motion for summary judgment, Dkt. 39, is **GRANTED** only as to the second page of the Venting Calculator. The remainder of CSCP's motion for summary judgment, Dkt. 39, is **DENIED**.

CCI's motion for leave to supplement the record, Dkt. 74, is **GRANTED**. CSCP's motions to seal, Dkts. 77, 93, and CCI's motion to seal, Dkt. 98, are **DENIED**. The Clerk

1   shall unseal Dkts. 77, 93, and 98 per Local Rule 5(g)(6). Local Rules W.D. Wash. LCR

2   5(g)(6).

3       Dated this 31st day of May, 2019.

4

5

                                BENJAMIN H. SETTLE

6                                   United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22